## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 13 C 3839 | **DATE** | 6/24/2013 |
| **CASE TITLE** | TCYK, LLC vs. Does 1-28 | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this order, the Court severs Doe 1 from Does 2-28, dismisses Does 2-28 from this suit without prejudice to plaintiff suing them individually and denies without prejudice plaintiff's motion to take early discovery [7].

■[ For further details see text below.]  Docketing to mail notices.

## STATEMENT

### Joinder

Plaintiff alleges that defendant Does 1-28 infringed its copyright in a motion picture by copying and distributing it on the internet in a "swarm" using BitTorrent software. (Compl. ¶¶ 3-4.) Though plaintiff alleges that defendants participated in the swarm on at different times over a ten-hour period April 19, 2013 (*id.*, Ex. B), it contends that they are all properly joined in this suit because a swarm, even one of significant duration, constitutes one transaction within the meaning of Rule 20. (*Id.* ¶ 15); *see* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them . . . arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action.").

However, as the court in *Malibu Media v. Reynolds* explained:

Despite its cooperative design, the BitTorrent protocol's architecture alone does not compel the conclusion that anonymous defendants who download copies of the same file from the same swarm are engaged in a common transaction or series of transactions for the purposes of Rule 20(a)(2). Where a swarm continues to exist for an extended period of time, it is improbable that defendants entering a swarm weeks or months apart will actually exchange pieces of data. Furthermore, it is impossible for defendants who are not in a swarm coextensively to exchange any pieces of a file.

No. 12 C 6672, 2013 WL 870618, at *11 (N.D. Ill. Mar. 7, 2013); *see Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493, 498 (D. Ariz. 2012) (holding that participation in the same swarm does not satisfy Rule 20(a) because a swarm "the initial participants may never overlap with later participants [, and] because pieces and copies of the protected work many be coming from various sources within the swarm, individual users might

**STATEMENT**

never use the same sources"); *On The Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 502 (N.D. Cal. 2011) ("Most recent decisions on this issue have concluded that the use of the BitTorrent protocol does not distinguish these cases from earlier rulings in P2P cases in which courts found that joining multiple Doe defendants was improper since downloading the same file did not mean that each of the defendants were engaged in the same transaction or occurrence.").

Even if the requirements for joinder were satisfied, the Court would still sever Does 2-28 from this suit pursuant to Rule 21. *Id.* ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *see Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000) (stating that district courts have "broad discretion" to determine whether to sever). As the Court in *Pacific Century International, Ltd v. Does 1-101*, aptly noted:

> The manageability difficulties, procedural inefficiencies, and likelihood that Defendants will assert myriad factual and legal defenses compel it to sever Does 2-101 from this case. An internetbased copyright infringement case with at least 101 defendants would prove a logistical nightmare. It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses. Case management and trial of 101 such claims would be inefficient, chaotic, and expensive. Each Defendant's varying defenses would require the court to cope with separate discovery disputes and dispositive motions, and to hold separate trials, each based on different evidence. Joining Defendants to resolve what at least superficially appears to be a relatively straightforward case would in fact transform it into a cumbersome procedural albatross.

No. C-11-02533 (DMR), 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) (citations omitted); *see Malibu Media*, 2103 WL 870618 at *15 ("[T]he individualized issues related to each Doe defendant's defense would wash away any judicial economy that may have been achieved through a plaintiff's mass-litigation strategy."); *Digital Sins, Inc. v. John Does 1-245*, No. 11 Civ. 8170 (CM), 2012 WL 1744838, at *3 (S.D.N.Y. May 15, 2012) (stating that "[t]rying 245 separate cases in which each of 245 different defendants would assert his own separate defenses under a single umbrella is unmanageable" and "[t]he only economy that litigating these cases as a single action would achieve is [the] economy to plaintiff . . . of not having to pay a separate filing fee for each action brought").

In short, the Court finds that plaintiff has not satisfied the Rule 20(a) conditions for joinder. Accordingly, it severs Doe 1 from the remaining defendants, and dismisses Does 2-28 from this suit without prejudice to plaintiff suing them individually.

**Early Discovery**

Plaintiff asks the Court for leave to issue a subpoena to defendant's internet service provider ("ISP") before the Federal Rule of Civil Procedure 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."). Rule 26 does not set forth a standard for doing so, but courts in this circuit have generally granted such motions on a showing of "good cause." *See, e.g., Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409, 410 (N.D. Ill. 2012); *AF Holdings, LLC v. Doe*, No. 12-1398, 2012 WL 5928532, at *1 (C.D. Ill. Nov. 26, 2012); *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D. 385, 386 (E.D. Wis. 2009). Good cause exists when "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Hard Drive Prods., Inc.*, 283 F.R.D. at 410 (quotation omitted). "In deciding a motion for expedited discovery, the Court evaluates the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Id.*

**STATEMENT**

(quotation omitted).

As many courts and commentators have noted, a showing of good cause is particularly important when, as in this case, plaintiff sues an internet user for illegally downloading copyrighted material. First, the increasing ubiquity of wireless networks undermines the copyright holder's assumption that the ISP subscriber is the copyright infringer. *See In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11-2995 (DRH) (GRB), 12-1147 (JS) (GRB), 12-1150 (LDW) (GRB), 12-1154 (ADS) (GRB), 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012) (stating that, because of the increasing use of wireless routers, by which one IP address can support multiple devices, the downloader could be the subscriber's family member, friend, visitor, neighbor or even a passerby); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. Jan. 30, 2012) (noting the risk that "many of the names and addresses produced [by the ISP] . . . will not in fact be those of the [infringers]," given the estimate by "[p]laintiff's counsel . . . that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material"); *VPR Int'l v. Does 1-1017*, No. 11-2068, 2011 WL 8179128, at *2 (C.D. Ill. Apr. 29, 2011) ("The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."). Second, the rise of so-called "copyright trolls" – plaintiffs who file multitudes of copyright suits solely to extort quick settlements – requires courts to ensure that the litigation process and their scarce resources are not being abused. *See generally*, Sean D. Karunaratne, *The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L. Rev. 283 (Nov. 2012); James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages*, 19 UCLA Ent. L. Rev. 79 (Winter 2012).

Plaintiff contends that there is good cause for issuing an early subpoena to Doe's ISP because that is the only way to identify Doe. Plaintiff bases that assertion on the Declaration of Darren M. Green, an agent of Crystal Bay Corporation, a company that "provides forensic investigation services to copyright owners." (*See* Mot. Leave Take Discovery Prior Rule 26(f) Conference, Ex. D, Green Decl. ¶¶ 1-2.) Green states that only Doe's ISP "can correlate [an] IP address to a specific subscriber" and "many ISPs only retain the information necessary to [make that] correlat[ion] . . . for a very limited period of time." (*See id.* ¶¶ 4-5.) Green does not, however, describe his education or experience or otherwise explain how he has knowledge of the practices and record-keeping policies of every ISP. Nor does he or anyone else explain how the frequency with which a subscriber identified by an ISP is determined not to have been the alleged infringer. Absent such information, plaintiff has not shown good cause for early discovery.